UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X  17-CV-573 (ARR)

LIBERTY TOWERS REALTY, LLC; LIBERTY TOWERS
REALTY I, LLC; NCC CAPITAL, LLC,

        Appellants,

  -against-

RICHMOND LIBERTY, LLC; WF LIBERTY LLC,

        Appellees.
------------------------------------------------------------------- X

Related to Bankruptcy Cases
No. 16-01014 (ESS); No. 15-44866 (ESS); No. 15-1065 (ESS); No. 15-1066 (ESS); No. 15-1191 (ESS); No. 15-1197 (ESS); No. 15-1198 (ESS); No. 14-45187 (ESS); No. 14-45189 (ESS)

OPINION & ORDER

ROSS, United States District Judge:

Debtors Liberty Towers Realty, LLC ("LTR"), and Liberty Towers Realty I, LLC ("LTR I"; collectively "Liberty Towers" or the "debtor"), together with their junior secured creditor, NCC Capital, LLC ("NCC"), appeal the decision of the Honorable Elizabeth S. Strong, United States Bankruptcy Judge, to approve a settlement agreement Liberty Towers signed but has since repudiated. Because I find that the bankruptcy court did not abuse its discretion in approving the settlement, the appeal is dismissed.

## BACKGROUND

The court assumes the parties' familiarity with the underlying facts and summarizes the relevant background briefly.[1] LTR and LTR I are each single asset real estate debtors whose sole assets are adjacent vacant lots on Staten Island (collectively, the "Properties"). Appellee WF Liberty LLC ("WF") holds mortgages on the Properties and is the senior lienholder in each

---

[1] The facts are not disputed. Unless otherwise noted, the facts are taken from the bankruptcy court's order of January 11, 2017. See Record at 2323 et seq. A more fulsome account of the facts, including a description of the various cases affected by the order now on appeal, can be found therein.

case. Appellant NCC holds a junior lien on one of the Properties. Appellee Richmond Liberty, LLC ("Richmond") holds an interest in the Properties by virtue of a contract of sale with WF, whereby WF agreed to sell the Properties to Richmond for $8,500,000 if WF obtained them after foreclosure.

WF initiated foreclosure proceedings against Liberty Towers when the latter defaulted on its mortgages. On January 24, 2011, WF obtained a judgment of foreclosure and sale on LTR's property. On July 7, 2014, WF obtained a judgment of foreclosure and sale on LTR I's property.

LTR and LTR I filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code on October 15, 2014. According to its petition, WF had a $15,000,000 claim against LTR, of which $8,000,000 was secured by the Properties, and NCC held a $1,000,000 claim fully secured by a subordinate lien on the Properties. Record at 83.[2]

On January 12, 2015, WF moved for the bankruptcy court to lift the automatic stay to enable it to proceed with the foreclosure auction. Record at 125. With its motion, WF presented an appraisal showing the properties to be worth far less than the value of its mortgage. Id. at 118, 142-43, 335. The court granted WF relief from the automatic stay on April 28, 2015. On July 16, 2015, WF Liberty was the winning bidder at the foreclosure sale, and Richmond's purchase right became fixed on that date.

LTR and its guarantors brought a motion to vacate the foreclosure sale. On September 3, 2015, the state court issued an order giving Liberty Towers the opportunity to redeem the Properties by making a payment to WF via electronic funds of $12,500,000 on or before September 24, 2015, later extended to October 13, 2015. On October 12, 2015, LTR attempted

---

[2] WF owns the mortgage originally made in favor of Garrison Special Opportunities Fund LP. Record at 119, 279-80.

to transfer certain real property or membership interests to WF in an effort to redeem the mortgage. The parties dispute whether such an effort constituted a valid redemption. However, it is undisputed that LTR did not transfer $12,500,000 to WF by electronic funds, as required by the literal terms of the state court order.

After many years of litigation, encompassing nine bankruptcy cases and several state court proceedings, the parties entered into a global settlement agreement on June 2, 2016. The settlement agreement was signed by Liberty Towers, Richmond, WF, and nonparty guarantors of Liberty Towers's debts. Settlement Agreement, Record at 1043-58. NCC took no part in the bankruptcy proceedings prior to this settlement and did not sign the Settlement Agreement.

Pursuant to the Settlement Agreement, Richmond would obtain clear and marketable title to the Properties. Id. ¶ 3. In exchange, Richmond would pay $10,500,000 to WF, reduced by up to $50,000 for administrative expenses related to the bankruptcy cases and up to $50,000 for other creditors of Liberty Towers. Id. Liberty Towers agreed not to pursue any claim to the Properties, and waived any rights it held by virtue of the attempted redemption. Id. ¶ 6. Finally, the parties agreed to discontinue all litigation amongst themselves and executed global releases. Id. ¶¶ 7-8.

Other important provisions of the Settlement Agreement include the following:

> Upon the execution of this Agreement, Richmond, through its counsel, shall promptly prepare and file a motion under Bankruptcy Rule 9019 seeking Bankruptcy Court approval of the terms and conditions of this Agreement. Upon entry of a "Final Order" . . . by the Bankruptcy Court approving the terms and conditions of this Agreement, this Agreement shall become binding upon all Parties. In the event the Bankruptcy Court does not approve this Agreement, this Agreement shall be null and void and of no force and effect and the rights of all Parties are specifically reserved as if this Agreement had not been entered into.

Id. ¶ 2. The Settlement Agreement is governed by New York law. Id. ¶ 10.

Richmond subsequently moved for bankruptcy court approval of the Settlement

3

Agreement. On July 22, 2016, the bankruptcy court held a hearing on the motion to approve the Settlement Agreement. At this hearing, Liberty Towers withdrew its support for the Settlement Agreement. The court held numerous hearings on the motion over the next six months, and by order dated January 11, 2017, the bankruptcy court approved the settlement, finding it to be in the best interests of the creditors and estate. Liberty Towers and NCC timely appealed this decision.

## STANDARD OF REVIEW

On appeal, a district court reviews a bankruptcy court's conclusions of law de novo. Asbestosis Claimants v. U.S. Lines Reorganization Tr. (In re U.S. Lines, Inc.), 318 F.3d 432, 435 (2d Cir. 2003). Findings of facts made by a bankruptcy court may not be set aside unless clearly erroneous. Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.), 468 B.R. 603, 611 (S.D.N.Y. 2012). "Mixed questions of law and fact are reviewed de novo. Matters left to the court's discretion are reviewed for abuse of discretion." In re Hirsch, 339 B.R. 18, 24 (E.D.N.Y. 2006) (citing Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85, 90 (2d Cir. 2003); DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75, 79 (2d Cir. 1998)). Abuse of discretion occurs when a bankruptcy court rests its decision "'on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding'" or where its decision, "'though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.'" Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.), 352 F.3d 671, 678 (2d Cir. 2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)). "A bankruptcy court's decision to approve a settlement is reviewed extremely deferentially." In re Schneider, No. 14-CV-1166 (JMA), 2015 WL 1412364, at *3 (E.D.N.Y. Mar. 26, 2015) (citing Cousins v. Pereira (In re

Cousins), No. 09 Civ. 1190 (RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010)).

## DISCUSSION

### A. Governing Law

"Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." Ad Hoc Comm. of Equity Holders of Republic Airways Holdings Inc. v. Republic Airways Holdings Inc. (In re Republic Airways Holdings Inc.), No. 16-cv-3315 (KBF), 2016 WL 2621990, at *12 (S.D.N.Y. May 6, 2016) (alteration omitted) (quoting In re Dewey & LeBoeuf LLP, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012)). Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") provides the bankruptcy court authority to approve a settlement upon motion and after notice and a hearing. Fed. R. Bankr. P. 9019(a). In the Second Circuit, "[b]efore pre-plan settlements can take effect, . . . they must be approved by the bankruptcy court pursuant to Bankruptcy Rule 9019." Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 455 (2d Cir. 2007).[3] "The purpose and effect of seeking court

---

[3] Other courts have noted that "[t]he scope of [Rule 9019] is not settled" and held that "Rule 9019 provides a procedure for approval of settlements, but does not create a substantive requirement of court approval that does not exist in the Code itself." See, e.g., In re Hall, No. 06-40872, 2010 WL 1730684, at *8, *10 (Bankr. D. Kan. Apr. 28, 2010) (citing In re Novak, 383 B.R. 660, 665 (Bankr. W.D. Mich. 2008)); In re Garrett, 494 B.R. 336, 341 n.4 (Bankr. N.D. Ill. 2013); In re Sparks, 190 B.R. 842, 844 (Bankr. N.D. Ill. 1996) (quoting In re Telesphere Commc'ns, Inc., 179 B.R. 544, 551-52 (Bankr. N.D. Ill. 1994), for the proposition that "the Bankruptcy Code contains no requirement for judicial approval of settlements").

The quoted language from Iridium, however, reflects the large number of cases in this and other circuits requiring judicial approval for pre-plan settlements. See, e.g., Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 180 (2d Cir. 2007) ("[A]ny 'settlement must be approved by the court[.]'" (quoting 10 Collier on Bankruptcy ¶ 9019.01, at 9019-2)); Salim v. Nisselson (In re Big Apple Volkswagen, LLC), No. 11-11388(JLG), 2016 WL 3034744, at *6 (Bankr. S.D.N.Y. May 19, 2016) ("Most courts, including courts in this district, mandate that debtors and trustees obtain court approval of proposed compromises and settlements of estate claims . . . ." (collecting cases)); Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289,

approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a . . . debtor-in-possession that affects the bankruptcy estate." In re Lexington Jewelers Exch. Inc., No. 08-10042-WCH, 2013 WL 2338243, at *5 n.12 (Bankr. D. Mass. May 29, 2013) (quoting In re OptInRealBig.com, LLC, 345 B.R. 277, 291 (Bankr. D. Colo. 2006)).

When presented with the question of whether to approve a proposed settlement, the bankruptcy court must make an "informed and independent judgment as to whether a proposed compromise is fair and equitable" after apprising itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). "However, a court should not conduct a 'mini-trial' on the merits." Schneider, 2015 WL 1412364, at *5 (quoting Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 177 (2d Cir. 2005)). "[A] bankruptcy judge need not decide the numerous questions of law and fact raised by the settlement, but rather, should 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" Bildirici v. Kittay (In re E. 44th Realty, LLC), No. 05 BR. 16167, 2008 WL 217103, at *8 (S.D.N.Y. Jan. 23, 2008) (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699

---

291 (E.D.N.Y. 1992) ("In general, debtors cannot bind their estates to compromises absent bankruptcy court approval." (citing Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir. 1988))); Am. Prairie Constr. Co. v. Hoich, 594 F.3d 1015, 1024 (8th Cir 2010) ("It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective."); Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.), 388 B.R. 386, 395 n.7 (M.D. Fla. 2008) (noting that "the majority of authority" imposes the obligation to obtain settlement approval).

In this case, the Settlement Agreement itself required judicial approval. See Settlement Agreement ¶ 2. Therefore, to the extent that the scope of Rule 9019 is unsettled, such controversy does not affect this opinion.

F.2d 599, 608 (2d Cir. 1983)).

The Second Circuit has identified the following factors to be used when evaluating settlements in bankruptcy cases:

(a) the probability of success should the issues be litigated, versus the present and future benefits of the settlement without the delay and expense of litigation and subsequent appeals;

(b) the likelihood of complex and protracted litigation if the settlement is not approved (with its attendant expense, inconvenience, and delay), including the difficulty in collecting on the judgment;

(c) the interests of the creditors, including the degree to which creditors support the proposed settlement;

(d) the proportion of interested parties who support the settlement, and the relative benefits to be received;

(e) the competency and experience of counsel supporting the settlement, and the extent to which the settlement is the product of arm's length bargaining; and

(f) the nature and extent of releases to be issued.

Iridium, 478 F.3d at 462. "To be approved, '[t]he settlement need not be the best that the debtor could have obtained.'" In re Sabine Oil & Gas Corp., 555 B.R. 180, 257 (Bankr. S.D.N.Y. 2016) (quoting In re Adelphia Commc'ns Corp., 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007)).

**B. The Parties' Positions**

Appellants argue, first, that Liberty Towers was entitled to rescind unilaterally the Settlement Agreement before it was approved by the bankruptcy court. Appellants' Brief, ECF No. 5 at *4-10. Second, they contend that Richmond had no authority to submit the Settlement Agreement for approval. Id. at *11. Third, appellants argue that the bankruptcy court should not have approved the Settlement Agreement in light of a junior creditor's objection. Id. at *2.[4]

---

[4] Appellants listed two additional grounds for appeal in their statement of issues: first, that the bankruptcy court did not consider the debtor's amended plan of reorganization, and second,

Appellees argue, first, that the existence of a superior offer is not a valid ground for rescission.  Brief for Richmond Liberty LLC, Debtor-Appellee ("Appellees' Brief") at 13, 18-22, ECF No. 7; see also Brief & Joinder of Appellee, WF Liberty LLC ("WF's Brief") at 1, ECF No. 8 (joining in Appellees' Brief); id. at 3-9 (presenting further argument on the issue of rescission).  Second, they counter that appellants' alleged "better offer" is impractical and "may or may not come to fruition."  Appellees' Brief at 14-18.  Third, they contend that Richmond had authority to present the Settlement Agreement as a debtor in its own Chapter 11 case and by the express terms of the Settlement Agreement.  Id. at 23-25.[5]

### C. Liberty Towers Was Not Entitled to Rescind the Settlement Agreement

Generally, a post-settlement offer will have no bearing on the enforceability of a

---

that the bankruptcy court inappropriately substituted its own judgment for that of the state court in interpreting the redemption order.  Record at 2115.  These issues were not briefed by appellants and are therefore waived.  See Zhang v. Gonzales, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (quoting Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998)).

In the alternative, these arguments are rejected on their merits.  First, the bankruptcy court plainly did consider the debtor's amended plan and found it unfeasible.  See Record at 2374-76.  Second, the bankruptcy court did not make any finding with respect to whether redemption occurred.  Rather, the court determined that appellants' likelihood of success in litigation to establish that redemption occurred was small.  Id. at 2381-82.  As the bankruptcy court noted, "[t]his is absolutely different than reviewing the determination of the State Court."  Id. at 2407.

Finally, appellants state in their brief that the Settlement Agreement was actually a disguised sale that should have been subjected to the requirements of 11 U.S.C. § 363 ("Section 363").  Id. at *10-11.  The bankruptcy court concluded that all requirements of Section 363 were met.  Record at 2405-07.  Appellants fail to identify any requirements of Section 363 that were not met.  I therefore dismiss their appeal on this ground.

[5]     Appellees also argue that, because Liberty Towers filed an amended plan of reorganization subsequent to this appeal, their contention that they have a superior offer is moot.  Appellees' Brief at 12.  Because I conclude that the existence of a superior offer is not ground for rescission, I assume without deciding that the superior offer still exists.

8

settlement agreement. Bankruptcy settlements are governed by state contract law. Castillo v. Gen. Motors, LLC (In re Motors Liquidation Co.), 500 B.R. 333, 340 (S.D.N.Y. 2013). The Settlement Agreement provides that New York law controls. Settlement Agreement ¶ 10. In New York, "'[s]tipulations of settlement are favored by the courts and not lightly cast aside.' Generally, 'a stipulation will only be set aside for good cause, such as fraud, collusion, mistake, accident[,] or some other ground of the same nature.'" Kantrowitz, Goldhamer & Graifman, P.C. v. Mason (In re Mason), 545 B.R. 462, 467 (Bankr. S.D.N.Y. 2016) (quoting Sanders v. Copley, 543 N.Y.S.2d 67, 69 (N.Y. App. Div. 1989)). Appellants do not argue that good cause existed to set aside the settlement.

Instead, appellants argue that the requirement of court approval provides a mechanism by which Liberty Towers can act on its buyer's remorse. Appellants point the court to several cases where a court relieved a debtor of its obligations under a settlement contract. See Appellants' Brief, ECF No. 5 at *5-10.[6] Appellees point to contrary authority. See Appellees' Brief at 18-

---

[6]  To be more precise, appellants' counsel quotes extensively from an article that cites to these cases. See Marcos A. Ramos and Cory D. Kandestin, When a Settlement Agreement No Longer is Consensual, Am. Bar Assoc. Bankr. & Insolvency Litig. Comm. ("ABA Article"), available at https://www.rlf.com/files/10084_ramos_kandestin_settlements.pdf. Appellants' counsel credited this article in briefing submitted to the bankruptcy court. See Record at 1682-87. However, in his brief on appeal, he plagiarized the article, directly copying pages of the article without attribution. Compare ABA Article to Appellants' Brief, ECF No. 5 at *5-10.

Federal courts have sanctioned attorneys for plagiarism, which violates rules of professional conduct in jurisdictions including New York. See, e.g., Lohan v. Perez, 924 F. Supp. 2d 447, 460 & n.9 (E.D.N.Y. 2013) (sanctioning an attorney for plagiarism and noting that such conduct "likely . . . violate[d] New York State Rule of Professional Conduct 8.4" (citing In re Steinberg, 620 N.Y.S.2d 345, 346 (N.Y. App. Div. 1994))); Consol. Paving, Inc. v. Cty. of Peoria, No. 10-CV-1045, 2013 WL 916212, at *6 (C.D. Ill. Mar. 8, 2013) ("Plagiarism is a serious issue, and several courts have found such behavior unacceptable and a violation of the Rules of Professional Conduct that govern attorneys' behavior." (collecting cases)).

I will not impose sanctions at this time. However, appellants' counsel is warned that future filings in this court must attribute work that is from another source. He is also cautioned

9

22. The Second Circuit has not spoken on this issue. Courts across the country take divergent approaches. In re Fortran Printing, Inc., 297 B.R. 89, 96 (Bankr. N.D. Ohio 2003) ("There exists split authority regarding the efficacy of unapproved settlements." (collecting cases)); Pineo v. Turner (In re Turner), 274 B.R. 675, 679 (Bankr. W.D.Pa. 2002) ("Courts are divided on the issue of whether an agreement is binding on the parties pending approval by the Bankruptcy Court." (collecting cases)).

In re Sparks is appellant's most analogous case. 190 B.R. 842, 844 (Bankr. N.D. Ill. 1996). There, the debtor-in-possession presented a plan of reorganization that incorporated a settlement with one of his creditors. Id. at 843. Before the settlement was approved by the bankruptcy court, the debtor received a better offer. Id. He subsequently modified the reorganization plan to incorporate the better offer and deleted all references to the settlement. Id. The bankruptcy court denied the creditor's motion to enforce the settlement, holding that a settlement presented as part of a bankruptcy plan is not enforceable against a debtor unless and until approved by the bankruptcy court. Id. at 845. The Sparks court reasoned that "requiring a debtor to seek approval of an agreement it no longer supports" "would pit the debtor in a conflict between his fiduciary duty to the estate and a duty to go forward with the agreement" and "create confusion about the applicable legal standard" because courts generally defer to a debtor's business judgment with respect to agreements affecting the estate of an ongoing concern. Id. (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)).

---

not to commit an additional ethical violation by charging his clients fees that are unreasonable given that half of his brief was copied from another source. See Shodeen v. Petit (In re Burghoff), 374 B.R. 681, 685-86 (Bankr. N.D. Iowa 2007) (sanctioning an attorney for copying a scholarly article into his brief without attribution and ordering attorney to disgorge fees charged to prepare brief).

For the reasons that follow, I decline to follow <u>Sparks</u> and similar cases. The better view of the law is that settlements requiring court approval are binding on all parties to the extent allowable under state law until the court considers and rejects the settlement. See <u>Seminole Walls</u>, 388 B.R. at 392 ("[T]he better-reasoned view is that the parties to a settlement agreement may not unilaterally repudiate it after approval of it has been sought pursuant to Rule 9019" (collecting cases)). This is so for several reasons. This rule better promotes settlement. See <u>id.</u> at 395 (explaining detrimental effects on settlement process of contrary rule). This rule also advantages the estate because it gives creditors more incentive to engage in serious settlement negotiations and abide by any settlement agreement reached in the time before it is approved by the bankruptcy court. Creditors' interests are better protected by the court's approval process than by permitting unilateral rescission by a debtor. See <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 394 (3d Cir. 1996) ("We cannot require a trustee herself to choose between . . . conflicting legal obligations [to the creditors and to the settling parties.] Rather, Rule 9019(a) demonstrates the legislature's intent to place this responsibility with the bankruptcy court."). Finally, as other courts have noted,

> It would be inequitable to allow a party to an otherwise enforceable agreement who has given the proper notice and scheduled a hearing under Rule 9019 to revoke an offer after it had been accepted merely because the court had not yet heard the motion to approve the compromise of the claim.

<u>Turner</u>, 274 B.R. at 681 (quoting <u>In re Frye</u>, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997)).

Of course, where a debtor receives a better offer after settlement but before approval, such a debtor may question whether its fiduciary obligations to its creditors oblige it to breach its settlement contract. See <u>Sparks</u>, 190 B.R. at 845. However, Rule 9019 provides a mechanism for debtors to respect all of their obligations. The debtor can abide by its obligations under the settlement agreement, including, if necessary, filing a motion for settlement approval. Then, to

11

protect the interest of its creditors, the debtor can present the post-settlement offer to the bankruptcy court in connection with the Rule 9019 proceedings. The court will then have the opportunity to evaluate whether this better offer warrants rejecting the settlement agreement. See Martin, 91 F.3d at 394 (stating that, where a trustee "was faced with a conflict between her fiduciary duty to the creditor body as a whole" and her duty to abide by a settlement agreement, "the trustee should inform the court and the parties of any changed circumstances since the entry into the stipulation of settlement" so that the court can "determine what course of action will be in the best interest of the estate"); In re Filene's Basement, LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *5–7 (Bankr. D. Del. Apr. 29, 2014) (applying Martin and reviewing settlement in light of changed circumstances). Indeed, that is precisely what happened in this case, and Judge Strong extensively considered the offers proposed after settlement. See, e.g., Record at 2375-76.

### D. Richmond Properly Moved for Approval of the Settlement Agreement

Appellants argue that, under Second Circuit precedent, only a trustee or debtor-in-possession may bring a motion for settlement approval under Rule 9019. Appellants' Brief, ECF No. 5 at *11 (citing Smart World, 423 F.3d at 181). Their case is distinguishable. In Smart World, creditors obtained bankruptcy court approval for a settlement that the debtor-in-possession did not sign. Smart World, 423 F.3d at 172. While the Second Circuit rejected the specific arguments advanced by the creditors to support their standing to bring such a motion, id. at 180, 183-84, the court explicitly recognized "that under certain circumstances, settlement of an estate's claim could be approved over the objections of the debtor-in-possession" and "d[id] not foreclose . . . the possibility of creditor standing in the Rule 9019 context," id. at 175-76. Under the facts of this case, where the debtor-in-possession negotiated and signed the Settlement Agreement, Smart World is not applicable.

12

In any event, the terms of the Settlement Agreement explicitly contemplate Richmond filing the motion for approval under Section 9019. See Settlement Agreement ¶ 2. To the extent that Liberty Towers was solely empowered to make such a motion, it delegated its authority to do so. Therefore, the Settlement Agreement was validly presented to the bankruptcy court for approval.

### E. NCC's Objection Did Not Warrant Rejecting the Settlement Agreement

Finally, NCC argues that the Settlement Agreement is unfair because it will receive only up to $50,000 in satisfaction of its $1,000,000 secured claim. However, NCC's mortgage was secondary to WF's mortgage. Because WF was not paid in full, there was no requirement that NCC be paid at all in order for the settlement to be approved. See 6-943 Collier on Bankruptcy P 943.03 (16th ed. 2017) ("[T]he absolute priority rule . . . requires that senior creditors be paid in full before any creditor junior to them may be paid at all."); Iridium, 478 F.3d at 463 n.18 ("[T]he absolute priority rule [is] the most important factor for courts to consider when deciding whether to approve a settlement under Rule 9019."). Finally, the bankruptcy court determined that "NCC . . . will receive more [under the Settlement Agreement] than they would receive under any feasible alternative. . . . It's more than any actual alternative presented to the [bankruptcy c]ourt would provide." Record at 2377. Nothing in the record indicates that this finding of fact was clearly erroneous.

## CONCLUSION

I thus conclude that the bankruptcy court did not abuse its discretion in approving the settlement. This appeal is dismissed. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

                                                               _____/s/_____
                                                                Allyne R. Ross
                                                                United States District Judge

Dated:        June 20, 2017
                 Brooklyn, New York